**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| JOSEPH BRUNKEL, | : | Case No. 3:16-cv-215 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Joseph Brunkel brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. He applied for benefits on October 10, 2012, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) George D. McHugh concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #5), and the record as a whole.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ McHugh's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since April 1, 2011. He was forty-four years old at that time and was therefore considered a "younger person" under Social Security Regulations. 20 C.F.R. § 404.1563(c). He has a limited education. 20 C.F.R. § 404.1564(b)(3).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ McHugh that he cannot work because of the severe pain in his back and neck. (Doc. #5, *PageID* #s 87, 103). His back pain started in 2003 or 2004, and he underwent a lumbar fusion surgery in 2006. *Id.* at 85-86. In the two years before the hearing, his pain has gotten worse. *Id.* at 90. It starts in his lower back and goes down his legs. *Id.* at 90-91. When he is in one position (standing, sitting, laying, etc.) for too long, his back pain increases. *Id.* at 91. On a scale from one to ten, his pain on an average day is a nine. *Id.* at 91. When he took medication regularly, his pain was at a four or five. *Id.* at 104.

Plaintiff also has severe neck pain. In April 2011, his doctor, Dr. Taha, "put [him] on permanent disability and did surgery on [his] neck." *Id.* at 84-85. Additionally, Plaintiff's arms and fingers go numb. *Id.* at 87. His hands bother him every other day, and his left hand is worse than his right hand. *Id.* at 89-90. He also has muscle weakness and "can barely pick up a gallon of milk." *Id.* at 87. He has difficulty reaching overhead

and twisting from side to side. *Id.* at 90-91. He "can probably touch [his] toes, but it would kill [him]." *Id.* at 91.

Plaintiff had medical insurance through Humana and had difficulty finding doctors. *Id.* at 88. He switched to CareSource and at the time of the hearing, his doctors were "starting to see [him] more." *Id.* At the time of the hearing, he was not receiving any treatment, but he has gone to the emergency room for pain medication. *Id.* at 92-93. Additionally, he indicated that he had a pain management appointment scheduled for the next Thursday. *Id.* at 88, 92.

Plaintiff also suffers from depression. *Id.* at 93. It began in 2011 when his father got sick. *Id.* His father passed away in 2012 and then his mother passed away in May 2015. *Id.* When asked what his symptoms are, he reported that he gets really nervous, jumps at loud noises, and gets aggravated with his roommate's children. *Id.* at 94. (Plaintiff lives with a friend and the friend's two children. *Id.* at 82.). He sometimes has suicidal thoughts but "won't act on it because [he thinks] that's a terrible way to go out." *Id.* He has crying spells approximately twice per week. *Id.* He has mood swings and trouble sleeping at night. *Id.* He hears his mother and father talking approximately twice per week. *Id.* at 95. He also has difficulty with concentration. *Id.*

He does not have a driver's license. *Id.* at 83. He estimated that he could walk less than a quarter of a mile and stand for ten to fifteen minutes at a time. *Id.* at 89. On a typical day, Plaintiff walks "[t]wo doors down" to his friend's house to watch television, sit on the porch, drink tea, and talk to him. *Id.* at 96, 102. He is able to shower and dress himself. *Id.* at 101. He washes dishes, vacuums, and does his own laundry with

assistance from his roommate's children. *Id*. He is not able to do any outside work such as mowing the lawn. *Id.* at 101-02.

Plaintiff attended school through eleventh grade. *Id.* at 83. He is not very good at reading or writing. *Id*. From 1995 through 2011, he worked as a certified electrician. *Id.* at 97. To be certified, he was required to attend an eight-hour class every Saturday for two years. *Id.* at 84.

### B. Medical Evidence

In June 2006, Plaintiff presented to Jamal Taha, M.D., and reported severe pain in his back and legs. *Id.* at 568. An MRI revealed displacement of the lumbar intervertebral disc without myelopathy and spinal stenosis of the lumbar region. *Id.* at 569, 611. Plaintiff underwent a laminectomy on the left at L4-L5 and posterior stabilization. *Id.* at 609. Although he recovered as expected, he continued to have back pain and began having numbness in his arms. *Id.* at 560-67.

In August 2007, a CT scan revealed severe foraminal stenosis, and Plaintiff underwent a right C3-4 and C4-5 posterior cervical foraminotomy. *Id.* at 557-59. Unfortunately, Plaintiff's pain quickly returned. *Id.* at 549-53.

In May 2010, Plaintiff began treatment with Mervet K. Saleh, M.D., at the Ohio Institute for Comprehensive Pain Management. *Id.* at 484. Dr. Saleh tried a lumbar selective nerve root block several times to help alleviate Plaintiff's pain. *Id.* at 484-85, 712-16. He also prescribed pain medication and muscle relaxers. *Id.* at 705, 709.

In April 2011, after Plaintiff's condition had not improved with conservative treatment, Dr. Taha performed an anterior cervical C5-6 discectomy with decompression

4

of neural tissue; anterior cervical C5-6 interbody fusion; and anterior cervical plating at C5-6. *Id.* at 475-77.

Plaintiff has since been evaluated by one consulting physician, Phillip Swedberg, M.D., and two consulting psychologists, Mary Ann Jones, Ph.D., and David Chiappone, Ph.D. *Id.* at 528-34, 753-70. Additionally, Plaintiff's records have been reviewed by eight State agency doctors, Steve E. McKee, M.D., Olga V. Pylaeva, M.D., Gary Hinzman, M.D., Anne Prosperi, D.O., Karen Terry, Ph.D., Robelyn Marlow, Ph.D., Irma Johnston, Psy.D., and David Demuth, M.D. *Id.* at 116-28, 143-83.

### III.  Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### IV. <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ McHugh to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential

6

steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 1, 2011.

Step 2: He has the severe impairments of degenerative disc disease of the cervical and lumbosacral spine with the residuals of surgery; affective disorder; and anxiety.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) lifting and carrying up to ten pounds frequently and twenty pounds occasionally; (2) walking or standing up to six hours; (3) sitting up to six hours; (4) no climbing of ropes, scaffolds and ladders; (5) occasional climbing of ramps and stairs; (6) occasional stooping, kneeling, crouching and crawling; (7) frequent bilateral overhead reaching; (8) no exposure to dangerous hazards such as unprotected heights or dangerous equipment; (9) limited to performing simple, routine and repetitive tasks, but not at a production rate pace or with strict quotas; (10) occasional interaction with supervisors, co-workers and the public; (11) limited to a static work environment, with few changes in the work setting; (12) no teamwork or tandem tasks; (13) limited to simple instructions and simple work-related decisions; (14) no commercial driving as part of job duties; (15) frequent bilateral handling and fingering; (16) a sit/stand option where the person can sit for fifteen minutes of every hour standing; and (17) in addition to normal breaks, off-task ten percent of the workday and absent one day a month."

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

7

(Doc. #5, *PageID* #s 53-62). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 62.

V.      **Discussion**

Plaintiff contends that the ALJ's findings are not based on substantial evidence because the ALJ failed to properly consider and address the medical evidence of record. He also argues that the ALJ erred in finding that he was not credible. The Commissioner maintains that the ALJ properly considered the medical evidence and properly evaluated Plaintiff's subjective complaints.

A.      **Medical Evidence**

Social Security Regulations recognize several different categories of medical sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."

*Id.* (quoting in part Soc. Sec. R. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996), and citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)–(2)).

8

Under the treating physician rule, a treating physician's opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and … is not inconsistent with other substantial evidence in [a claimant's] case record." *Gayheart*, 710 F.3d at 376 (citation and internal quotation marks omitted); *see Gentry*, 741 F.3d at 723. If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

### 1. Treating Doctors: Dr. Taha & Dr. Saleh

ALJ McHugh found, "No treating or examining source reported [Plaintiff] was disabled from all work activity." (Doc. #5, *PageID* #59). However, he also acknowledged that Dr. Taha opined that Plaintiff was unable to work from May 11, 2011 through July 29, 2011. *Id.* at 58, 799. He did not assign any weight to the note and

9

concluded that it "falls short of the durational requirements of the Act." *Id.* at 58. But, the ALJ does not recognize that only one month later, on June 6, 2011, Dr. Taha noted, "I agree with permanent disability." *Id.* at 469. In addition, the ALJ did not address Dr. Saleh's notes that Plaintiff is "Permanently disabled." *Id.* at 855, 859, 863, 867.

The Commissioner correctly observed that Dr. Taha's and Dr. Saleh's opinions that Plaintiff is "disabled" are opinions on issues reserved to the Commissioner. (Doc. #9, *PageID* #929) (citing 20 C.F.R. § 404.1527(d)). As such, the opinions "are never entitled to controlling weight or special significance." Soc. Sec. R. 96–5p, 1996 WL 374183, at *2 (Soc. Sec. Admin. July 2, 1996). However, the same Ruling also mandates: "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *Id.* at *3; *see Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) ("If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled …—'his decision need only 'explain the consideration given to the treating source's opinion.''") (quoting *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 493 (6th Cir. 2010); quoting Soc. Sec. R. 96–5p, 61 Fed. Reg. 34474). While the ALJ could not assign controlling weight or special significance to Dr. Taha's and Dr. Saleh's opinion that Plaintiff is "disabled," he is not permitted to ignore it. The ALJ's failure to consider—or even mention—their opinion constitutes error.

Plaintiff contends the ALJ's failure to consider these opinions and the accompanying notes, poses a second issue: "The ALJ ignored or glossed over substantial evidence which documented substantially more impairment than was recognized by the

10

ALJ." (Doc. #6, *PageID* #903). In addition, he asserts that the ALJ improperly "'pick[ed] and [chose]' only the evidence that supports his position. *Id.* (citations omitted). The Commissioner disagrees, contending that an ALJ must consider all of the evidence but is not required to summarize every piece. (Doc. #9, *PageID* #s 923-24) (citing *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 730 (6th Cir. 2013); *Boseley v. Comm'r of Soc. Sec.,* 397 F. App'x 195, 199 (6th Cir. 2010). Further, the Commissioner argues, "the Court can infer that the ALJ considered all of the evidence of record because he credited the opinion[s] of State agency medical consultant[s] Anne Prosperi, D.O. …" and Phillip Swedberg, M.D. *Id.* at 925.

Under the Regulations, an ALJ must consider all of the evidence in a plaintiff's record. *See* 20 C.F.R. § 404.1520(a)(3). ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). However, ALJs are not required to discuss each piece of evidence in their decision, "so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley,* 397 F. App'x at 199 (citing *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (per curiam)).

The ALJ's only discussion of Plaintiff's treating doctors is at step two. (Doc. #5, *PageID* #55). Given the extensive treatment records, to say that his discussion was brief would be an overstatement:

> Chart notes from Dr. Taha, the claimant's neurosurgeon, indicate that he underwent an anterior cervical diskectomy and fusion in April 2011 (Exhibit 2F, page 13). An earlier MRI of the cervical spine had shown multilevel degenerative

> disk disease (Exhibit 2F, page 8). Further review of Dr. Taha's treatment notes show that an MRI of the lumbar spine had been obtained in March 2008, which demonstrated a prior lumbar fusion (Exhibit 5F, page 52).
>
> Progress notes from Dr. Saleh, a pain management specialist, reflect that the claimant was treated for complaints of chronic pain. He was treated conservatively with pain medications, muscle relaxants, and nerve blocks (Exhibits 3F, 6F, and 15F). Dr. Saleh obtained x-rays of the lumbar spine in August 2012, which showed that the lumbar fusion was stable (Exhibit 7F, page 9).

*Id.*

Both doctors had a protracted treatment relationship with Plaintiff. Dr. Taha began treating Plaintiff in 2006 and continued to treat him through at least 2011. *Id.* at 568, 798. Similarly, Dr. Saleh's treatment of Plaintiff began in 2010 and continued through 2013. *Id.* at 484, 751.

Both doctors' notes detailed their treatment of Plaintiff and both contain substantial evidence in support of Plaintiff's claims. For example, Dr. Saleh notes that Plaintiff's "[f]unctional impairment is severe – when present[,] it interferes with most, but not all, daily activities." *Id.* at 836. Further, he also recorded Plaintiff's difficulty with health insurance. For example, he "was supposed to have a NCS but we are out of network." *Id.* at 845. And, "[Plaintiff] has had psych eval for SCS and has been approved. His co-pay is cost prohibitive and he is trying to pay down his current balance." *Id.* at 855. Significantly, Dr. Saleh notes at least five times, "Patient is not currently working. Permanently disabled." *Id.* at 750, 855, 859, 893, 867.

Dr. Taha's treatment notes are illuminating as well. He consistently documented Plaintiff's severe pain in his back and neck and numbness in his arms. *Id.* at 549-52, 560, 564, 566-69, 798. Dr. Taha noted in April 2011, "He has failed extensive conservative treatment for more than 2 [years] now with [physical therapy] and traction and injections and pain management. He is [disabled] from his pain now." *Id.* at 467. And, just one month after completing the form indicating Plaintiff was unable to work until July 29, 2011, Dr. Taha opines, "I agree with permanent disability." *Id.* at 469.

There is nothing in the ALJ's decision that indicates he considered all—or even most—of the treating physicians' notes. To infer that the ALJ considered all of the treating doctor's notes based on two short paragraphs requires unreasonable speculation—indeed, too great of a leap of faith. Accordingly, ALJ McHugh's findings are not supported by substantial evidence. *See Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x 636, 641 (6th Cir. 2013) ("Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.") (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

### 2. Examining Doctors: Dr. Swedberg, Dr. Jones, & Dr. Chiappone

The ALJ assigned Dr. Swedberg's great weight because "it is consistent with the results of the physical examination and diagnostic imaging studies." (Doc. #5. *PageID* #58) (citation omitted). He further found that the opinions of Dr. Jones and Dr. Chiappone were entitled to "great weight as they are consistent with their reports …." *Id.*

13

(citation omitted).  However, the ALJ questioned Dr. Jones and Dr. Chiappone's opinion that Plaintiff's cognitive functioning was in the borderline range.  He noted that no psychometric tests were performed and the opinion was "inconsistent with [Plaintiff's] past relevant work, which the Vocational Expert classified as skilled work." *Id.*

The ALJ's bare-bones assessment of the examining doctors' opinions constitutes error under the Regulations:  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96–6p, 1996 WL 374180, at *2 ([ALJs] … are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

The ALJ only addressed one factor: consistency.  He did not provide any examples or explanation; he merely concludes that the opinions are consistent or are not.  His conclusions are not supported by substantial evidence.  For example, he gives great weight to an opinion because it is consistent with the report.  But, when a doctor's opinion is contained in that same doctor's report, giving that opinion great weight because it is consistent with the report is illogically tautological and does not constitute a good reason for giving an opinion great weight.  Similarly, the ALJ does not accept two doctors' opinion that Plaintiff's cognitive functioning is in the borderline range because the opinion is inconsistent with a vocational expert's classification of past work.  Under the Regulations, the definition of "skilled work" does not include a minimal level of

14

intellectual functioning. *See* 20 C.F.R. § 404.1568(c). Further, there is no evidence that a person with borderline intellectual functioning could not, in some circumstances, perform skilled work. Thus, the ALJ erred by failing to address the factors provided in 20 C.F.R. § 404.1527; and substantial evidence does not support his limited findings.

### 3. Record-Reviewing Doctors:  Dr. Hinzman, Dr. Prosperi, Dr. Johnston, & Dr. Demuth

The ALJ found that the opinions of record-reviewing physician Dr. Hinzman and record-reviewing psychologist Dr. Johnston were entitled to no weight. (Doc. #5, *PageID* #58). He provided no further explanation. In comparison, he concluded that Dr. Prosperi's opinion was entitled to great weight because it was consistent with the medical evidence. *Id.* (citation omitted). The ALJ does not identify what evidence is consistent. He also gave Dr. Demuth's opinion great weight but provided no rationale and noted, "the undersigned concludes that some additional work-related restrictions are required." *Id.* (citation omitted).

As explained above, when a treating source's opinion is not given controlling weight, ALJs must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant…." 20 C.F.R. § 404.1527(e)(2)(ii); *see* Soc. Sec. R. 96–6p, 1996 WL 374180, at *2. The ALJ's failure to do so in this case constitutes error.

### B. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that

15

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal

criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Joseph Brunkel was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: June 5, 2017                                  *s/Sharon L. Ovington*
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).